Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| WM CAPITAL PARTNERS, LLC<br><br>Apelante<br><br>v.<br><br>GOLDEN TRIANGLE REALTY, S.E., ET AL.<br><br>Apelados<br><br>PEARL HOLDINGS, LLC.<br><br>Interventor-Apelado | KLAN202400019 | Apelación Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.<br>K CD2011-2109<br><br>Sobre:<br>Cobro de Dinero; Ejecución De Hipoteca |

Panel integrado por su presidente, el Juez Bonilla Ortiz, el Juez Pagán Ocasio, y el Juez Rivera Torres.

Pagán Ocasio, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 1 de marzo de 2024.

**I.**

El 8 de enero de 2024, WM Capital Partners 53, LLC (WM Capital o parte apelante) presentó una *Apelación Civil* (Apelación) ante esta Curia en la que solicitó que revoquemos una *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI, foro primario o foro *a quo*), el 7 de diciembre de 2023, y notificada y archivada el 8 de diciembre de 2023.[2] En su dictamen, el TPI declaró a Pearl Holdings, LLC (Pearl Holdings o parte interventora-apelada) como la parte con derecho preferente sobre los fondos depositados el 26 de junio de 2018[3] en la Unidad de Cuentas

---

[1] Véase Orden Administrativa OATA 2024-004, del 11 de enero de 2024.
[2] Apéndice de la Apelación, Anejo 14, págs. 212-228. Dicha determinación dispuso de las solicitudes de sentencia sumaria y sus respectivas oposiciones, y declaró **con lugar** la *Demanda Enmendada de Intervención*. Consecuentemente, declaró a Pearl Holdings como la parte preferente sobre los fondos consignados en el TPI y ordenó a la Unidad de Cuentas del foro primario a liberar un cheque a favor de la parte interventora-apelada por una suma de $3,183,426.82.
[3] Íd., Anejo 8, pág. 155.

del TPI por Golden Triangle Realty, S.E. (Golden Triangle o parte apelada), y consecuentemente ordenó a la Unidad de Cuentas a liberar un cheque a favor de la parte interventora-apelada por una suma de $3,183,426.82.

El 12 de enero de 2024, emitimos una *Resolución* en la que le concedimos a la parte apelada y la parte interventora-apelada hasta el 7 de febrero de 2024 para presentar su alegato en oposición a la Apelación.

El 6 de febrero de 2024, la parte interventora-apelada presentó una *Urgente Moción de Prórroga para Someter Alegato de la Parte Apelada* en la que solicitó una prórroga de veinte (20) días para presentar su alegato en oposición al recurso de apelación.

Ese mismo día, emitimos una *Resolución* en la que le concedimos a Pearl Holdings una prórroga final hasta el 16 de febrero de 2024.

El 16 de febrero de 2024, Pearl Holdings presentó un *Alegato en Oposición a Recurso de Apelación* en el que solicitó que se confirmara la *Resolución* apelada.

Contando con el beneficio de la comparecencia de las partes, damos por perfeccionado el recurso de epígrafe, y, en adelante, pormenorizaremos los hechos procesales atinentes a la Apelación.

**II.**

El caso de marras tiene su génesis el 21 de diciembre de 2011 cuando Scotiabank de Puerto Rico (Scotiabank) presentó una *Demanda* en contra de Golden Triangle, VSJ Realty, S.E., Full House Development, Inc., Convention Center Parking, Inc., Caribbean Sea View, Inc., David Santiago Martínez, Diana Ortiz Borges y la Sociedad de Bienes Gananciales compuesta por ambos, Fulano de Tal y Sutano más Cual (en conjunto, co-demandados) en reclamo de

cobro de dinero, ejecución de prenda y de hipoteca.[4] En lo específico, Scotiabank solicitó al TPI que les ordenara a los co-demandados a satisfacer la cantidad de $24,163,575.10 en concepto de principal adeudado, $4,001,901.88 por intereses, y recargos por mora y honorarios de abogado. Además, solicitó la ejecución simultánea de todas las prendas, garantías e hipotecas sobre el préstamo otorgado a favor de Golden Triangle.

Tras varios trámites procesales, Scotiabank le cedió a la parte apelante el crédito reclamado en la *Demanda*, y consecuentemente, el 13 de octubre de 2015, WM Capital compareció y presentó una *Moción de Sustitución de Parte y Asumiendo Representación Legal*, en la que solicitó a la parte apelante como nueva parte demandante.[5]

El 14 de octubre de 2015, los co-demandados reclamaron su derecho al retracto de crédito litigioso.[6] No obstante, luego de varios trámites procesales, el 3 de diciembre de 2020, el Tribunal Supremo de Puerto Rico emitió una *Sentencia* por la cual dictaminó que la figura de retracto de crédito litigioso no procede y no aplica en el presente caso por versar sobre la cesión o venta de varios instrumentos negociables, a tenor con la *Ley de Transacciones Comerciales*, Ley Núm. 208 del 17 de agosto de 1995, 19 LPRA secs. 401 *et seq.* (Ley Núm. 208-1995).[7] Por lo que revocó la determinación del foro apelativo intermedio, que confirmó al TPI, y devolvió el caso al foro primario para la continuación de los procedimientos de cobro de dinero y la ejecución de las garantías correspondientes.

---

[4] Véase la *Sentencia* emitida el 3 de diciembre de 2020 por el Tribunal Supremo de Puerto Rico en este caso, AC-2019-0087, de la cual tomamos conocimiento judicial de este hecho procesal, a tenor con la Regla 201 de Evidencia, 32 LPRA Ap. VI, R. 201; Apéndice de la Apelación, Anejo 1, págs. 4-5.

[5] Véase la *Sentencia* emitida el 3 de diciembre de 2020, *supra*, de la cual tomamos conocimiento judicial de estos hechos procesales, a tenor con la Regla 201 de Evidencia, *supra*; Apéndice de la Apelación, Anejo 1, pág. 6.

[6] Véase la *Sentencia* emitida el 3 de diciembre de 2020, *supra*, de la cual tomamos conocimiento judicial de este hecho procesal, a tenor con la Regla 201 de Evidencia, *supra*; Apéndice de la Apelación, Anejo 1, pág. 6.

[7] Apéndice de la Apelación, Anejo 1, págs. 1-15.

Como resultado de ello, el 5 de abril de 2021, Pearl Holdings presentó una *Demanda Enmendada de Intervención* alegando específicamente haber perfeccionado un contrato de préstamo con los co-demandados, por el cual les facilitó la suma de $4 millones para ejercer el derecho de retracto de crédito litigioso contra WM Capital en el caso de marras.[8] Sin embargo, las partes contratantes, mediante ese contrato, pactaron una cláusula resolutoria por la cual se estableció que la devolución de ese dinero consignado en la Unidad de Cuentas del foro primario estaba condicionado a dos (2) eventos; a saber: (1) que el tribunal no reconociera el derecho al retracto litigioso o (2) que el ejercicio de ese derecho fuese mayor a los $4 millones.

El 24 de junio de 2021, el foro primario denegó esa *Demanda Enmendada de Intervención.*[9] No obstante, un Panel hermano de este Tribunal emitió una *Sentencia* el 12 de enero de 2022, en el caso KLAN202100500, por la que revocó la determinación del foro primario e inmediatamente, ordenó la admisión de la participación de Pearl Holdings como la parte interventora. Específicamente determinó que Pearl Holdings ostenta un interés propietario sobre los fondos depositados en el foro *a quo* y que se configuró un gravamen mobiliario sobre ese dinero consignado.[10]

Luego de varios trámites procesales, el foro primario emitió una *Sentencia* el 4 de noviembre de 2021, notificada y archivada el 10 de noviembre de 2021, mediante la cual declaró con lugar la *Demanda* en su totalidad.[11] Además, determinó, en parte, que los co-demandados le adeudan a WM Capital una suma de $23,569,530.00 por concepto de principal; $17,435,913.85

---

[8] Íd., Anejo 2, págs. 16-24.
[9] Véase la *Sentencia* emitida el 10 de abril de 2023 por este Tribunal en el caso KLAN202200915 de la cual tomamos conocimiento judicial de este hecho procesal, a tenor con la Regla 201 de Evidencia, *supra.*
[10] Apéndice de la Apelación, Anejo 4, págs. 59-78.
[11] Íd., Anejo 3, págs. 25-58.

correspondientes a intereses, los cuales continúan acumulándose diariamente, a razón de $3,067.24; $59,793.65, en concepto de las cantidades pactadas en las hipotecas y adelantos; y otra partida que asciende a $4,224,248.00, correspondiente a costas, gastos y honorarios de abogados.

El 16 de septiembre de 2022, WM Capital presentó una *Contestación a Demanda Enmendada de Intervención.*[12] Subsiguientemente, el foro primario emitió una *Orden* el 24 de febrero de 2023, notificada y archivada el 27 de agosto de 2023, por la que declaró con lugar la solicitud de anotación de rebeldía en contra de los co-demandados por no haber contestado *la Demanda Enmendada de Intervención.*[13]

El 19 de julio de 2022, WM Capital radicó una *Moción para Enmendar Sentencia y Dejar sin Efecto la Paralización.*[14] Después de examinar la oposición presentada por los co-demandados, el foro *a quo* emitió una *Sentencia Enmendada* el 29 de agosto de 2022, notificada y archivada el 1 de septiembre de 2022, por la cual **eliminó la determinación sobre preferencia de WM Capital respecto a los fondos consignados en la Unidad de Cuentas del TPI**.[15] El 10 de abril de 2023, este Tribunal emitió una *Sentencia* mediante la cual confirmó la *Sentencia Enmendada.*[16]

Luego de varios trámites procesales, el 24 de mayo de 2023, WM Capital y Pearl Holdings presentaron una *Moción Conjunta para Permitir Estipulación de Hechos Materiales en Apoyo a que se dicte Sentencia Sumaria y Solicitud de Prórroga para presentar Mociones Dispositivas.*[17] Por medio de esta, informaron los hechos materiales

---

[12] Íd., Anejo 6, págs. 113-115.
[13] Íd., Anejo 7, págs. 116-119.
[14] Véase la *Sentencia* emitida el 10 de abril de 2023 en el caso KLAN202200915 de la cual tomamos conocimiento judicial de este hecho procesal, a tenor con la Regla 201 de Evidencia, *supra.*
[15] Apéndice de la Apelación, Anejo 5, págs. 79-112.
[16] Véase la *Sentencia* emitida el 10 de abril de 2023 en el caso KLAN202200915 de la cual tomamos conocimiento judicial de este hecho procesal, a tenor con la Regla 201 de Evidencia, *supra.*
[17] Apéndice de la Apelación, Anejo 8, págs. 120-155.

esenciales e incontrovertidos para resolver la *Demanda Enmendada de Intervención* de forma rápida, económica y justa, y para estar en posición de presentar sus respectivas sentencias sumarias. A esos efectos, los hechos materiales incontrovertidos estipulados fueron:

**1.** El 25 de junio de 2018 Pearl Holdings, LLC. ("Pearl") y Golden Triangle Realty, SE. ("Golden Triangle"), otorgaron un *Term Sheet for Funding Acquisition of Mortgage Notes on Real Property Located at 602 ave. Manuel Fernández, San Juan, PR 00907* (en adelante "*Term Sheet*").

**2.** El *Term Sheet* se firmó en preparación para un futuro contrato de préstamo a otorgarse entre las partes.

**3.** La cantidad acordada para el préstamo fue hasta la suma de $4,000,000.00.

**4.** En el *Term Sheet* Pearl y Golden Triangle acordaron en la cláusula 19 como sigue:

19. The Developers and Owners shall continue to vigorously defend any case related the administration of the property by the developers and existing action that has an impact on the property in order to protect Pearl's interests. In the event of an adverse result during the appellate process, including from the Supreme Court of Puerto Rico, any funds deposited as part of the transaction shall be promptly returned to Pearl counsel's escrow account. Pearl or its counsel shall have the right to intervene during the proceedings to enforce the terms of the Ruling. Pearl's counsel should always prepare first any draft of any legal action to be taken, with further review and evaluation to follow by Developers' Counsel. Pearl's counsel shall have the right to withdraw from the Court any funds deposited in the event of an adverse result in the legal action.

**5.** El 26 de junio de 2018 Golden depositó $3,183,426.82 en la Unidad de Cuentas del Tribunal en cumplimiento con la decisión judicial del 18 de junio de 2018.

**6.** El 26 de junio de 2018 la Unidad de Cuentas del Tribunal expidió el recibo oficial #31962 por la cantidad depositada de $3,183,426.82.

**7.** El 27 de julio de 2018 Pearl y Golden Triangle otorgaron un contrato de préstamo (*Loan Agreement*) según acordado en el *Term Sheet*. En la cláusula 11 del referido contrato incorporaron el *Term Sheet* como parte de este.

**8.** El propósito del préstamo de Pearl a Golden Triangle fue para que esta última pudiese ejercer el derecho de retracto de crédito litigioso en el caso de autos según la decisión judicial del 18 de junio de 2018.

**9.** En el contrato de préstamo se acordó, en la cláusula 3 que: "This loan is guaranteed by a promissory note, a UCC lien on the amounts deposited at the Clerk's Office of the San Juan Court of First Instance, the rents obtained from the rental agreements disclosed in Appendix I and the real property described in Public Deed 21 granted on July 27, 2018 before public notary. In addition to this collateral, the forthcoming land transfer from the Puerto Rico Highway Authority shall be included as part of the collateral and the appropriate documents shall be executed once the land transfer is completed."

**10.** El 8 de mayo de 2020 se presentó la declaración de financiamiento ante el Departamento de Estado. En dicha declaración, Pearl es el "Secured Party" y Golden el "Debtor" así como otras entidades. Como "Collateral Description" se expresó: "Principal amount disbursed on June 24, 2018 at the San Juan Court of First Instance was $3,183,426.82".

**11.** El Tribunal Supremo de Puerto Rico, mediante sentencia no publicada, determinó posteriormente que en el caso de autos no procedía el ejercicio del retracto de crédito litigioso.[18]

En ese extremo, el foro primario emitió una *Orden* el 26 de mayo de 2023, notificada y archivada el 30 de mayo de 2023, por la cual declaró con lugar la moción conjunta.[19]

El 9 de junio de 2023, la parte apelante presentó una *Moción de Sentencia Sumaria para Desestimar Demanda de Intervención Enmendada.*[20]

Por su parte, ese mismo día, la parte interventora-apelada presentó una *Moción de Sentencia Sumaria* por dos (2) razones principales: (1) que tiene derecho preferente a los fondos consignados en la Unidad de Cuentas del foro primario, los cuales fueron producto de una transacción asegurada, a tenor con la Ley Núm. 208-1995, *supra*; y (2) en la alternativa, esos fondos depositados son propiedad de Pearl Holdings, a tenor con la cláusula

---

[18] Íd., págs. 121-122. (Énfasis en el original).
[19] Íd., Anejo 9, págs. 156-157.
[20] Íd., Anejo 10, págs. 158-170.

resolutoria incluida en el contrato de préstamo celebrado con Golden Triangle.[21]

El 27 de junio de 2023, WM Capital presentó una *Oposición a Moción de Sentencia Sumaria del Interventor* reiterando su argumento de que la parte interventora-apelada perdió control sobre el dinero en cuestión cuando la parte apelada los consignó en el tribunal.[22] También alegó que la cláusula resolutoria no activa derechos reales sino personales, por lo que esa condición resolutoria no surte efecto contra WM Capital como ente tercero al contrato suscrito por Pearl Holdings y Golden Triangle.

El 29 de junio de 2023, Pearl Holdings presentó una *Oposición a Moción de Sentencia Sumaria* por la cual sostuvo que la transacción celebrada con la parte apelada cumplió con todos los requisitos de la Ley Núm. 208-1995, *supra*, para la configuración del gravamen mobiliario y WM Capital, mediante su solicitud de sentencia sumaria, añade requisitos a la perfección de gravámenes mobiliarios.[23] Arguyó en la alternativa que, Pearl Holdings tiene derecho preferente a los referidos fondos por haberse cumplido uno de los dos (2) eventos para activar la condición resolutoria; a saber, no aplica el derecho de retracto de crédito litigioso en el caso de epígrafe.

En vista de ello, el TPI emitió una *Resolución* el 7 de diciembre de 2023, notificada y archivada el 8 de diciembre de 2023, mediante la cual dictaminó que Pearl Holdings tiene derecho preferente a los fondos depositados en el foro primario por tener un gravamen mobiliario con eficacia jurídica sobre esos fondos. En la alternativa, Pearl Holdings posee mejor derecho sobre esos fondos a tenor con la cláusula resolutoria.

---

[21] Íd., Anejo 11, págs. 171-192.
[22] Íd., Anejo 12, págs. 193-199.
[23] Íd., Anejo 13, págs. 200-211.

Inconforme, WM Capital acudió ante nos mediante el presente recurso y le imputó al TPI la comisión de los siguientes errores:

PRIMER ERROR: El Tribunal de Primera Instancia erró al conceder sumariamente la demanda enmendada de intervención de Pearl Holdings LLC. Este interventor no perfeccionó una garantía sobre los fondos consignados al carecer del control necesario mediante un *Deposit Account Control Agreement* ("DACA").

SEGUNDO ERROR: El Tribunal de Primera Instancia erró al decidir que Pearl Holdings LLC tenía un gravamen mobiliario válido porque los demandados nunca perdieron el control sobre los fondos consignados.

TERCER ERROR: El Tribunal de Primera Instancia erró al concluir que era suficiente para perfeccionar una garantía mobiliaria el contrato de préstamo, sin que Pearl y los demandados tuvieran que otorgar separadamente un contrato de garantía mobiliaria.

CUARTO ERROR: El Tribunal de Primera Instancia erró al concluir, en la alternativa, que Pearl Holdings LLC tenía un mejor derecho que WM Capital sobre los fondos consignados al estipular con su deudor una alegada cláusula resolutoria que requería que el deudor devolviera el dinero consignado judicialmente de no prevalecer en el ejercicio del derecho de retracto de crédito litigioso.

QUINTO ERROR: El Tribunal de Primera Instancia erró al ordenar que la unidad de cuentas desembolse el dinero depositado a favor de Pearl. La controversia entre WM Capital y Pearl era quién tenía el derecho preferente sobre los fondos consignados judicialmente. Pearl nunca probó en su moción de sentencia sumaria que tenía una deuda líquida, vencida, y exigible y tampoco produjo copia del pagaré.

El 16 de febrero de 2024, Pearl Holdings presentó un *Alegato en Oposición a Recurso de Apelación* en el que solicitó que se confirmara la *Resolución* apelada, al ser conforme a Derecho.

Consecuentemente, el caso quedó perfeccionado para determinación judicial.

**III.**

**A.**

El mecanismo procesal de la sentencia sumaria surge de la Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1. El propósito de esta regla es facilitar la solución justa, rápida y económica de litigios civiles en los cuales no existe controversia real

y sustancial de hechos materiales que no requieren ventilarse en un juicio plenario. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Bobé et al. v. UBS Financial Services*, 198 DPR 6, 20 (2017); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013). Mediante este mecanismo, una parte puede solicitar que el tribunal dicte sentencia sumaria de la totalidad de la reclamación o de parte de esta. De esta forma se promueve la descongestión de calendarios, así como la pronta adjudicación de controversias cuando una audiencia formal resulta en una dilación innecesaria. *Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004).

Ahora bien, el mecanismo de sentencia sumaria solo está disponible para la disposición de aquellos casos que **sean claros**; cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda; y que solo reste por disponer las controversias de derecho existentes. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911-912 (1994). Asimismo, al evaluarse los méritos de una solicitud de sentencia sumaria, el juzgador debe actuar guiado por la prudencia, consciente en todo momento de que su determinación puede privar a una de las partes de su día en corte. *León Torres v. Rivera Lebrón,* 204 DPR 20, 44 (2020). De la mano con este precepto del debido proceso de ley, el juzgador deberá utilizar el principio de liberalidad a favor del opositor de la moción, lo cual implica que, de haber dudas sobre la existencia de controversias de hechos materiales, entonces deberán resolverse a favor de la parte que se opone a la moción de sentencia sumaria. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 138 (2015); *Ramos Pérez v. Univisión*, 178 DPR 200, 216-217 (2010).

Para prevalecer en una moción de sentencia sumaria, su promovente tiene que establecer su derecho con claridad y debe demostrar que no existe controversia en cuanto a ningún hecho material, o sea, ningún elemento de la causa de acción. *Meléndez*

*González et al. v. M. Cuebas*, supra, pág. 110. Por hechos materiales se entienden aquellos que pueden afectar el resultado de una reclamación de acuerdo con el derecho sustantivo. *Ramos Pérez v. Univisión*, supra, pág. 213. La controversia sobre el hecho material debe ser real. Íd. A saber:

> [U]na controversia no es siempre real o sustancial, o genuina. La controversia debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor. Si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria. *Íd.,* págs. 213-214 *citando a* P. E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

En suma, deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

En contraste, el oponente a la moción de sentencia sumaria está obligado a establecer que existe una controversia que sea real en cuanto a algún hecho material a la controversia y, en ese sentido, no es cualquier duda la suficiente para derrotar la solicitud. *Meléndez González et al. v. M. Cuebas*, supra. En efecto, la duda debe ser tal que permita concluir que existe una controversia real y sustancial sobre los hechos materiales. Íd., citando a *Ramos Pérez v. Univisión,* supra, pág. 214. De esta manera, central entre las responsabilidades de la parte promovida se encuentra que debe puntualizar los hechos propuestos que pretende controvertir, haciendo referencia a la prueba específica que sostiene su posición. *León Torres v. Rivera Lebrón,* supra, pág. 44. Es decir, "la parte opositora tiene el peso de presentar evidencia sustancial que apoye

los hechos materiales que alega están en disputa". Íd. De esta forma, no puede descansar en meras aseveraciones o negaciones de sus alegaciones, sino que debe proveer contradeclaraciones juradas y documentos que sustenten los hechos materiales en disputa. *SLG Zapata-Rivera v. JF Montalvo*, supra; *Ramos Pérez v. Univisión*, supra, pág. 215; *Cruz Marcano v. Sánchez Tarazona*, 172 DPR 526, 550 (2007). Lo anterior, además, es cónsono con los requerimientos establecidos por las Reglas de Procedimiento Civil, *supra*, en lo pertinente a este mecanismo procesal.

En síntesis, ha quedado establecido que los tribunales no podrán dictar sentencia sumaria en cuatro situaciones: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando existen alegaciones afirmativas en la demanda sin refutar; (3) cuando surge de los propios documentos que acompañan la moción en solicitud de sentencia sumaria que existe una controversia sobre algún hecho material o esencial; o (4) cuando no procede como cuestión de Derecho. *Oriental Bank v. Perapi*, 192 DPR 7, 26-27 (2014).

De otra parte, en *Meléndez González et al. v. M. Cuebas*, supra, el Tribunal Supremo delineó el estándar que el Tribunal de Apelaciones debe utilizar para revisar una denegatoria o una concesión de una moción de sentencia sumaria.

En primer lugar, reafirmó que el Tribunal de Apelaciones se encuentra en la misma posición que el TPI al momento de revisar solicitudes de sentencia sumaria, siendo su revisión una *de novo* y teniendo la obligación de regirse por la Regla 36 de Procedimiento Civil, *supra*, y los criterios que la jurisprudencia le exige al foro primario. *Meléndez González et al. v. M. Cuebas*, supra, pág. 115. Asimismo, deberá examinar el expediente de la manera más favorable hacia la parte promovida, llevando a cabo todas las inferencias permisibles a su favor. Íd. Ahora bien, reconoció que el

foro apelativo esta limitado, toda vez que no podrá tomar en consideración evidencia que las partes no presentaron ante el foro primario, ni podrá adjudicar los hechos materiales en controversia. Íd.

En segundo lugar, prescribió que el Tribunal de Apelaciones deberá revisar que tanto la moción en solicitud de sentencia sumaria, como la oposición, cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*. *Meléndez González et al. v. M. Cuebas*, supra, pág. 118.

En tercer lugar, mandató que, ante la revisión de una sentencia dictada sumariamente, el Tribunal de Apelaciones deberá revisar si en realidad existen hechos materiales en controversia y, de haberlos, estará obligado a exponer específicamente cuáles hechos materiales están en controversia y cuáles no, en cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. *Meléndez González et al. v. M. Cuebas*, supra, pág. 118.

En cuarto lugar, dispuso que, si encuentra que los hechos materiales realmente no están en controversia, entonces el Tribunal de Apelaciones deberá revisar *de novo* si el foro primario aplicó correctamente el Derecho. Íd., pág. 119.

**B.**

Los acreedores garantizados son "persona[s] en cuyo favor se crea una garantía mobiliaria o se provee bajo un acuerdo de garantía mobiliaria, indistintamente si la obligación que será garantizada está o no pendiente de pago". Ley Núm. 208-1995, *supra*, sec. 2212. En ese extremo, la Ley Núm. 208-1995, *supra*, sec. 451 define las garantías mobiliarias como "un derecho real sobre propiedad mueble o inmueble por su destino que garantiza el pago o cumplimiento de una obligación". En *PR Asset Portfolio 2013-1 International, LLC v. Tropical Heifers, Inc.*, 206 DPR 559, 571 (2021), el Tribunal Supremo de Puerto Rico particularizó dos (2)

eventos fundamentales por los cuales los gravámenes mobiliarios adquieren eficacia jurídica; a saber: la constitución o *attachment* y el perfeccionamiento.

Por un lado, la constitución es cuando los gravámenes mobiliarios son exigibles contra el deudor con relación a la propiedad gravada. Ley Núm. 208-1995, *supra,* sec. 2233. Para la aludida constitución se requieren tres (3) elementos:

> **(1)** se haya dado valor;
> **(2)** el deudor tenga derechos sobre la propiedad gravada o el poder de transferir derechos en la propiedad gravada al acreedor garantizado; y
> **(3)** que una de las siguientes condiciones se cumpla:
> **(A)** el deudor haya autenticado un acuerdo de garantía mobiliaria que contenga una descripción de la propiedad gravada y, (i) si la garantía mobiliaria cubre una póliza de seguro de vida, la condición establecida en la Sección 9-107.1(b) haya sido cumplida, y (ii) si la garantía mobiliaria cubre madera en pie, una descripción de la finca correspondiente; . . . . Íd. (Énfasis en el original).

Por otro lado, un acreedor garantizado podrá perfeccionar las garantías mobiliarias "sobre documentos negociables, bienes, instrumentos, dinero o papel financiero tangible" y, por ende, hacerlas oponibles frente a terceros tomando posesión de la propiedad gravada. Íd., sec. 2263; véase, además, ***PR Asset Portfolio 2013-1 International, LLC v. Tropical Heifers, Inc.***, supra, pág. 572; ***Des. Caribe v. Ven-Lour Enterprises***, 198 DPR 290, 303 (2017). En esa misma línea, la sección 9-310 de la Ley Núm. 208-1995, *supra,* sec. 2260, establece en lo pertinente que, "[e]xcepto que de otro modo se disponga en la subsección (b) y Sección 9-312 (b), una declaración de financiamiento deberá ser radicada para perfeccionar todas las garantías mobiliarias. . .".

### C.

Según disponía el derogado Código Civil de Puerto Rico del 1930 (Código Civil de 1930), 31 LPRA ant. sec. 2992, las obligaciones nacen de la ley, los contratos, cuasicontratos, y actos y omisiones

ilícitos en donde intervenga culpa o negligencia. Véase, además, **López v. González**, 163 DPR 275, 281 (2004). Aquellas obligaciones nacidas de los contratos ostentan fuerza de ley entre las partes contratantes. Código Civil de 1930, *supra*, ant. sec. 2994. Incluso, los contratos se perfeccionan por el mero consentimiento y desde entonces "**obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley**". Código Civil de 1930, *supra*, ant. sec. 3375 (Énfasis suplido); Véase, además, **Pérez Rodríguez v. López Rodríguez**, 210 DPR 163, 186-187 (2022).

Es norma conocida que la existencia de los contratos depende de la concurrencia de tres (3) requisitos; estos son, el consentimiento de los contratantes; objeto cierto que sea materia del contrato; y causa de la obligación que se establezca. Código Civil de 1930, *supra*, ant. sec. 3391; Véase, además, **Pérez Rodríguez v. López Rodríguez**, supra, pág. 186. Igualmente, las partes contratantes podrán "establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". Código Civil de 1930, *supra*, ant. sec. 3372; Véase, además, **Pérez Rodríguez v. López Rodríguez**, supra, pág. 187. Como norma general, el cumplimiento de una obligación constituida mediante contrato es desde que esta se constituye. **López v. González**, supra, pág. 282. Sin embargo, existen tres (3) modalidades en las relaciones jurídicas. Estas son las obligaciones puras, condicionales y a plazo. Íd.

En **López v. González**, Íd., nuestro máximo foro expresó cuando aplica cada una:

> …[las obligaciones] *Puras* son las exigibles desde el instante mismo de quedar constituida la relación obligatoria; las *condicionales* son aquéllas cuya eficacia depende de un acontecimiento incierto, y *a plazo* o a *término* las que dejan establecida en firme la

prestación sin que pueda exigirse todavía en el momento de quedar constituida la relación obligatoria. Íd. (Subrayado en el original) (*citando a* J. Puig Brutau, Fundamentos de Derecho Civil, 3ra ed. rev., Barcelona, Ed. Bosch, 1985, T. I, Vol. II, pág. 81).

En cuanto a las obligaciones condicionales, estas se dividen en obligaciones resolutorias y obligaciones suspensivas. En lo pertinente al caso de marras, las obligaciones con condiciones resolutorias serán exigibles, sin perjuicio de los efectos de la resolución. Código Civil de 1930, *supra*, ant. secs. 3041-3042. Contrario a las obligaciones con condiciones suspensivas, aquellas obligaciones sujetas a condiciones resolutorias "surte[n] efecto legal desde el preciso momento en que surge el concurso de voluntades. Desde ese instante la obligación existe en su integridad como si la condición no se hubiera pactado". **Atocha Thom McAn, Inc. v. Registrador**, 123 DPR 571, 579 (1942). Sin embargo, tan pronto ocurre el hecho resolutorio, la obligación se extingue de forma automática. J.M. Lete del Río & J. Lete Achirica, *Derecho de Obligaciones*, Navarra, Editorial Aranzadi, 2007, Vol. I, pág. 190.

### IV.

En el caso ante nos, el TPI emitió una *Resolución* por la cual declaró con lugar la *Demanda Enmendada de Intervención* y consecuentemente, determinó que Pearl Holdings es la parte con derecho preferente sobre los fondos depositados por Golden Triangle en la Unidad de Cuentas del TPI. Asimismo, ordenó a la Unidad de Cuentas a liberar dichos fondos a favor de la parte interventora-apelada por una suma de $3,183,426.82. El foro primario realizó tal determinación al reconocer que la parte interventora-apelada tiene constituido y perfeccionado un gravamen sobre los fondos depositados, lo cual es oponible a WM Capital. En la alternativa, Pearl Holdings tiene derecho preferente a esos fondos a tenor con la cláusula resolutoria incluida en el contrato de préstamo constituido entre Pearl Holdings y Golden Triangle.

En desacuerdo, WM Capital le imputó al TPI la comisión de cinco (5) errores.

Como primero y segundo error, se alegó que el TPI erró al conceder sumariamente la *Demanda Enmendada de Intervención* cuando Pearl Holdings no tenía control sobre esos fondos, condición necesaria para perfeccionar una garantía mobiliaria sobre los mismos. Lo anterior, según WM Capital, fue causado por no haber constituido un DACA y por el propio acto de consignar los fondos en la Unidad de Cuentas del TPI. Por su parte, la contención de Pearl Holdings es que poseer un DACA no es uno de los requisitos impuestos por la sección 9-203 de la Ley Núm. 208-1995, *supra*, sec. 2233 para la constitución de un gravamen mobiliario sobre dinero, sino una práctica de la industria. Además, alegó no haber perdido control sobre esos fondos por su consignación, pues al Tribunal Supremo de Puerto Rico resolver la improcedencia del derecho de retracto en el caso de marras, la consignación realizada para ejercer tal derecho no surtió efecto alguno.

Por otro lado, y como tercer error, la parte apelante alegó que el foro *a quo* erró al concluir que el contrato de préstamo era suficiente para perfeccionar una garantía mobiliaria sin haber otorgado un contrato de garantía mobiliaria. Sin embargo, la parte interventora-apelada argumentó que ese contrato era innecesario por haber cumplido con los tres (3) requisitos de garantía mobiliaria, a tenor con la Ley Núm. 208-1995, *supra*: (1) Pearl Holdings y Golden Triangle otorgaron un valor al instrumento mediante el *Loan Agreement*, (2) Golden Triangle tenía derecho sobre la propiedad gravada, y (3) Golden Triangle firmó un acuerdo de constitución con una descripción de la propiedad gravada por medio del *Term Sheet* y *Loan Agreement*.

En su cuarto error, la parte apelante sostuvo que el foro primario erró al concluir en la alternativa que la parte interventora-

apelada tenía un mejor derecho a los fondos depositados a tenor con la cláusula resolutoria del contrato de préstamo cuando los contratos son entre las partes y no surten efecto contra terceros como WM Capital. La contención de Pearl Holdings fue, sin embargo, que, al no aplicar el derecho de retracto, se activó la cláusula resolutoria. Además, arguyó que, ante el cumplimiento de la condición resolutoria supone volver al estado jurídico preexistente como si el negocio no se hubiera concluido y que las partes se devuelvan las cosas o prestaciones, siendo estas el dinero consignado.

En su último error, WM Capital argumentó que el foro primario erró al ordenar a la Unidad de Cuentas del TPI a desembolsar el dinero a favor de Pearl Holdings cuando esta nunca probó, mediante moción de sentencia sumaria, haber tenido una deuda líquida, vencida y exigible, y por no haber producido copia del pagaré. Por su parte, Pearl Holdings sostuvo que la propia cláusula resolutoria establecía que de no proceder el derecho de retracto quedaba resuelta la obligación de restitución.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica apelativa adjudicativa, resulta forzoso concluir que el TPI no incidió en los errores señalados. Todo lo contrario. Resulta evidente que el foro *a quo* no se apartó del dictamen emitido por este foro respecto al gravamen mobiliario sobre los fondos consignados y la cláusula resolutoria en cuestión, sino que actuó conforme a la ley del caso. Consecuentemente, la determinación apelada es correcta en derecho.

Como cuestión de umbral, de los cinco (5) errores señalados por la parte apelante se desprenden dos (2) controversias principales; estas son: (i) si se constituyó un gravamen mobiliario sobre esos fondos y (ii) quién tiene derecho preferente sobre los fondos consignados en la Unidad de Cuentas del TPI.

Adviértase que la controversia sobre si se perfeccionó una garantía mobiliaria sobre los fondos consignados <u>es académica.</u> Un Panel hermano de este Tribunal emitió una *Sentencia* el 12 de enero de 2022, en el caso KLAN202100500, mediante la cual se estableció que de la cláusula resolutoria surgía claramente el interés propietario de Pearl Holdings para intervenir en el caso de marras, conforme a la Regla 21.2 de Procedimiento Civil, *supra*, R. 21.2, y que se constituyó un gravamen mobiliario sobre los fondos consignados. Específicamente, este Tribunal resolvió:

> En su escrito ante nosotros la parte apelada insiste en que Pearl Holdings no podía constituir un gravamen mobiliario sobre los fondos consignados en [la] Unidad de Cuentas del TPI, pues tales fondos ya no se encontraban en su patrimonio, por el acto mismo de la consignación, y por este haber perdido el control y posesión sobre los mismos. **No tiene razón**.
>
> Ello por cuanto, *mientras el acreedor no haya aceptado la consignación, o no haya recaído la declaración judicial de la suficiencia del pago, el deudor puede retirar la cosa o la cantidad consignada, dejando subsistente la obligación.* 31 LPRA sec. 9186. Es decir, *la consignación per se no cuarta la facultad jurídica del propietario.* Ver, Margarita García Cárdenas, Derecho de Obligaciones y Contratos, San Juan, MJ Editores, 2012.
>
> Es un hecho incontrovertido que la consignación no surtió efecto alguno en este caso pues, por sentencia final y firme, el Tribunal Supremo resolvió que no procedía el ejercicio del retracto de crédito litigioso. Por tanto, no existiendo escenario alguno en el que pueda considerarse bien hecha la consignación, y que pudiera surtir efectos extintivos sobre la obligación en cuestión, nos es forzoso concluir que el deudor demandante nunca perdió el uso, control y posesión civil de los fondos consignados en la Unidad de Cuentas del TPI.
>
> En consecuencia: **(1) se desembolsó el dinero consignado a cambio del gravamen mobiliario;** (2) el deudor tenía derecho sobre la propiedad gravada; (3) se cumplió con la condición de que el deudor firmó un acuerdo de constitución de gravamen mobiliario que contiene una descripción de la propiedad gravada.
>
> De conformidad, concluimos que la petición de Pearl Holdings para comparecer como parte interventora descansa en el interés propietario que tiene sobre los fondos que están consignados en la Unidad de Cuentas del tribunal, por lo que se debió permitir su participación en el pleito original como tal. (Énfasis suplido).[24]

---

[24] Íd., Anejo 4, págs. 76-77.

En otras palabras, la determinación sobre la existencia del gravamen mobiliario se convirtió en final y firme. Por lo tanto, el foro primario no incidió en su determinación al reafirmar nuestro dictamen respecto a la existencia de un gravamen mobiliario sobre los fondos consignados.

Por último, el TPI actuó correctamente al concederle a Pearl Holdings el derecho preferente sobre los fondos depositados, a tenor con la cláusula resolutoria. Del expediente del caso de autos se desprende que tanto la parte apelante como la parte interventora-apelada estipularon como hecho incontrovertido que:

> **10.** El 8 de mayo de 2020 se presentó la declaración de financiamiento ante el Departamento de Estado. En dicha declaración, Pearl es el "Secured Party" y Golden el "Debtor" así como otras entidades. Como "Collateral Description" se expresó: "Principal amount disbursed on June 24, 2018 at the San Juan Court of First Instance was $3,183,426.82". (Énfasis en el original).

En otras palabras, la parte apelante admitió que la parte asegurada de los fondos consignados en el TPI es Pearl Holdings.

Además, tal y como fue determinado por este Tribunal, en el caso KLAN202100500, Pearl Holdings y Golden Triangle acordaron una cláusula resolutoria mediante el contrato de préstamo. A tenor con dicha determinación, esta condición resolutoria indica que, si se determinaba que el crédito litigioso no procedía en el caso de epígrafe, los fondos depositados en la Unidad de Cuentas del TPI debían ser retirados por Pearl Holdings. Específicamente, el *Loan Agreement* establece en lo pertinente que:

> **LOAN AGREEMENT**
>
> . . . .
>
> **RECITALS**:
>
> WHEREAS: On June 24, 2018, the parties to this Agreement executed a Term Sheet where Pearl would provide to Golden Triangle Realty S.E., Convention Center Parking, Inc. and Full House Development, Inc. represented by their sole owners, Dr. David Santiago and Mrs. Diana Ortiz, **a loan of up to $4,000,000 to**

**exercise their litigious credit rights in <u>WM Capital Partners 53, LLC v. Golden Triangle Realty, S.E.</u> et al, KCD2011-2109 (506).**

. . . .

1. **SCOPE.** Pursuant to the Term Sheet executed on June 24, 2018, the entities and their principal owners obtained a financing structure that will offer it **up to $4,000,000** in collateralized financing. As the Term Sheet states, the amount disbursed will held by the Clerk at the San Juan Court of First Instance **until** the highest court of competent jurisdiction issues a ruling favorable to the defendant Entities. Once said ruling is issued, the Entities will be able to exercise their litigious credit rights as established under the laws of the Commonwealth of Puerto Rico. . . .

. . . .

3. **COLLATERALIZATION OF THE LOAN.** This loan is guaranteed by a promissory note, a UCC lien on the amounts deposited at the Clerk's office of the San Juan Court of First Instance, the rents obtained from the rental agreements disclosed in Appendix I and the real property described in Public Deed 21 granted on July 27, 2018 before public notary. In addition to this collateral, the forthcoming land transfer from Puerto Rico Highway Authority shall be included as part of the collateral for this loan and the appropriate documents shall be executed once the land transfer is completed. . . .[25] (Énfasis suplido y subrayado en el original).

En ese extremo, este Tribunal, en el caso KLAN202100500, resolvió, en cuanto a estas cláusulas, que:

De este modo, no hay duda de que en el referido contrato se estableció expresamente, en lo pertinente, que los fondos que Pe[ar]l Holdings prestó a los demandados se utilizarían **únicamente** para el ejercicio del retracto de crédito litigioso. Es decir, el incumplimiento y la devolución del dinero consignado en la Unidad de Cuentas del Tribunal quedó condicionado a dos eventos: (1) **que no se reconociera el ejercicio del retracto del crédito litigiosos por el tribunal** o, (2) que el ejercicio de dicho derecho excediese los $4,000,000. Por tanto, como condición lógica de una obligación con condición resolutoria, el efecto de que no se le reconociera el derecho al ejercicio del retracto de crédito litigioso es la reversión del título de la cosa que se encontraba consignada, pues así fue expresamente pactado. (Énfasis en el original).

---

[25] Íd., Anejo 8, págs. 140-141.

Consecuentemente, no hay duda de que, a tenor con la cláusula resolutoria, Pearl Holdings es la parte con preferencia a los fondos depositados.

Por todo lo anterior, resulta imperativo concluir que el TPI no cometió los errores señalados por la parte apelante, que el dictamen es correcto en derecho y, por lo tanto, corresponde la confirmación de la determinación del TPI.

**V.**

Por los fundamentos pormenorizados precedentemente, se *confirma* la *Resolución* apelada.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones